[Civ. No. 41162. Second Dist., Div. Two. Jan. 24, 1974.]

MICHAEL LEE MAHONEY et al., Plaintiffs and Appellants, v. GEORGE CONRAD CORRALEJO, Defendant and Respondent.

## COUNSEL

Eckert, O'Gorman & McFarland, Eckert & O'Gorman and Charles V. Eckert III for Plaintiffs and Appellants.

Tom Halde, Lascher & Radan, Edward L. Lascher and Ann Palmer for Defendant and Respondent.

## OPINION

**COMPTON, J.**—Plaintiff Michael Lee Mahoney who was injured when struck by a motorcycle operated by defendant brought an action for personal injury.[1] Plaintiff appeals from a judgment for defendant entered following a trial by jury.

### PLAINTIFF'S CONTENTIONS

Plaintiff's attack on the judgment is grounded on the alleged error of the trial court in (1) refusing to instruct the jury on wilful or wanton misconduct, (2) refusing to instruct on the doctrine of last clear chance, and (3) refusing to give certain proffered instructions on the rights and duties of motorists and pedestrians.

### FACTS

The case is before us on a settled statement of facts which insofar as is relevant to this appeal and viewed in the light most favoring the judgment, establishes the following:

On October 9, 1969, at about 10:30 at night, plaintiff and his girlfriend Carolyn left a party where they had been about two hours and walked by way of an alley to Trigo Road, a level east-west street in Isla Vista, California. The alley ran between Camino Pescadero to the east, and Camino del Sur to the west. Plaintiff had consumed a glass of wine punch at the party. Both he and his girlfriend were wearing dark clothing, although plaintiff did have on a blue and white striped T-shirt.

When they reached Trigo Road, plaintiff and Carolyn started walking east, on the south side of Trigo, with their dark-clad backs to eastbound traffic. There were no sidewalks and Carolyn walked on the inside, next to the curb. It was physically possible to walk on the north side of the street facing traffic and to walk on or along the south curb out of the actual street.

---

[1]George H. Mahoney, the father of Michael, was joined as plaintiff and is a party to this appeal. For convenience we will refer to Michael as the plaintiff.

In any event, plaintiff and the girl walked side by side, arms linked, near the curb, until they came to a parked car, where they "moved out further into the street" to go around it. After passing that car, crossing a driveway and walking past a second and half the length of a third parked car, plaintiff was struck from the rear by a motorcycle operated by defendant. Defendant was carrying a passenger on the motorcycle. Defendant was not properly licensed to operate the motorcycle.

At the time, defendant was traveling east on Trigo at about 30 miles per hour in clear, dry weather, although a Highway Patrol officer testified it was "very dark," since the nearest street lights were at the intersection of Camino del Sur to the west and Via Pescadero to the east.

The motorcycle had one seat, about two feet long, on which both driver and passenger could sit comfortably without undue contortion of defendant's body, or interference with operation of the motorcycle. The headlamp was operating, on either high or low beam, illuminating a distance of 60 feet in front of defendant's vehicle.

Trigo Road is about 30 feet wide from curb to curb. The width of a car is about six feet. The point of impact was apparently about 10 feet from the south curb of Trigo, toward the center of the street.

Plaintiff admitted that he heard the motorcycle coming, but "did nothing to get out of the way," believing "he would be seen," and that the motorcycle traveling in the street "would not endanger him."

For his part, defendant testified that he did not see plaintiff until the instant before impact; he immediately locked his brakes but was unable to avoid a collision.

## THE WILFUL OR WANTON MISCONDUCT ISSUE

The complaint purported to plead two causes of action[2] in the name of the plaintiff. One cause of action was pleaded as a typical negligence action. Another cause of action set forth more detailed facts of the occurrence embellished with adjectives such as "recklessly and dangerously" and the conclusionary phrase that defendant acted ". . . with wanton disregard of the possible harmful and dangerous consequences of said conduct, flirting with danger and having reason to know that [such] acts and conduct were highly dangerous." The latter pleading assiduously avoided any contention that defendant intentionally or wilfully inflicted injury on plaintiff.

---

[2]Two causes of action in the name of the father sought medical expenses incurred by him, but incorporated the charging allegations from the counts pleaded in the name of the plaintiff.

At the close of the evidence the trial court granted a "non-suit" as to the "cause of action" for wanton misconduct. The jury was instructed on ordinary negligence and contributory negligence.

On this appeal plaintiff contends that we should apply the rules applicable to the granting of a nonsuit and find that the evidence was sufficient to submit his "cause of action" for wilful or wanton misconduct to the jury. This according to plaintiff could have resulted in a judgment in his favor even though the evidence quite clearly demonstrated contributory negligence on his part. We disagree.

Plaintiff had but one cause of action even though by his duplicative complaint he attempted to carve out two.

■ "In California the phrase 'causes of action' is often used indiscriminately to mean what it says and to mean *counts* which state differently the same cause of action, . . ." (*Eichler Homes of San Mateo, Inc.* v. *Superior Court,* 55 Cal.2d 845, at p. 847 [13 Cal.Rptr. 194, 361 P.2d 914].)

"The cause of action, as it appears in the complaint . . . will therefore always be the facts from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or act of wrong." (Pomeroy, Code Remedies (5th ed.) p. 528; see also *Eichler Homes, supra; Kaufman & Broad Bldg. Co.* v. *City & Suburban Mortg. Co.,* 10 Cal.App.3d 206, at p. 215 [88 Cal.Rptr. 858].)

Civil Code section 1714 provides: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the title on compensatory relief."

■ That statute simply codifies the common law dichotomy of intentional torts and negligence. ■ California has recognized various degrees of negligence which invoke various legal consequences but as was stated in *Donnelly* v. *Southern Pacific Co.,* 18 Cal.2d 863, at page 869 [118 P.2d 465]: "A negligent person has no desire to cause the harm that results from his carelessness, . . . and he must be distinguished from a person guilty of willful misconduct, such as assault and battery, who intends to cause harm. [Citation.] Willfulness and negligence are contradictory terms. [Citations.] If conduct is negligent, it is not willful; if it is willful, it is not negligent."

■ Our courts have developed over the years a concept that a defendant's conduct, while still embraced by the general term negligence, may be sufficiently opprobrious or culpable to warrant stripping defendant of the defense of contributory negligence and invoking the legal consequences of an intentional tort. Varying titles, sometimes misleading, such as "willful negligence," "wanton and willful misconduct," "gross negligence" and "wanton and reckless misconduct" have been used to describe this type of conduct. (See *Donnelly* v. *Southern Pacific Co., supra.*)

■ As was stated in *Pelletti* v. *Membrila,* 234 Cal.App.2d 606, 611 [44 Cal.Rptr. 588], "If conduct is sufficiently lacking in consideration for the rights of others, reckless, heedless to an extreme, and indifferent to the consequences it may impose, then, regardless of the actual state of mind of the actor and his actual concern for the rights of others, we call it wilful misconduct, and apply to it the consequences and legal rules which we use in the field of intended torts."

This rule is not simply a device by which the artful pleader may circumvent the well-established defense of contributory negligence. ■ No amount of descriptive adjectives or epithets may turn a negligence action into an action for intentional or wilful misconduct. Plaintiff's success in eliminating the defense of contributory negligence depends upon whether the evidence is reasonably susceptible of establishing conduct which the court concludes warrants such a sanction.

In the case at bar the plaintiff had a single cause of action which sounded in negligence. The only issue is whether the evidence was such that defendant's conduct could reasonably be characterized as such a high degree of negligence as to require the trial judge to instruct the jury on the effect of wanton misconduct. The granting of the "non-suit" simply eliminated the duplicity in the complaint.

■ A party has a right to instructions on his theory of the case if it is reasonable, *and finds support in the pleadings and the evidence.* (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, p. 3012; *Stickel* v. *Durfee,* 88 Cal. App.2d 402 [199 P.2d 16]; *Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630 [255 P.2d 795].)

Quoting again from *Pelletti,* at page 611:

"[W]hen conduct falls sufficiently below the acceptable norm to become grossly deficient, we characterize it as imbued with a bad intent . . . ." ■ Stated another way if the conduct is so dangerous and reckless and anti-social as to warrant the same sanctions as one who intentionally injures another then we infer the intent from the conduct.

A determination of whether conduct so closely approaches the line of intentional conduct as to invoke the rules applicable to intentional conduct requires a very searching quantitative and qualitative analysis of the evidence by the trial judge before he invests the jury with the power to abrogate the traditional rules applicable to negligence actions. Since the trial judge observed the witnesses first hand and was in the best position to have a "feel" for the evidence, we at the appellate level must give deference to his determination of the issues of the *reasonableness and evidentiary support* of the plaintiff's theory and look only for an abuse of discretion.

The burden of proof was on plaintiff. ■ " ' "In order to justify the submission of any question of fact to a jury, the proof must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged. It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists, . . ." ' " (*Wigodsky* v. *Southern Pac. Co.,* 270 Cal.App.2d 51, 55 [75 Cal.Rptr. 419].)

■ Since we are dealing with a contention by plaintiff that defendant's conduct approximated the intentional infliction of injury and warranted the sanction of eliminating contributory negligence as a defense, we examine that conduct to see if it suggests the overt "hint of aggression" which is generally present in the facts of those cases in which wanton and reckless misconduct has been found to exist.

For example, in *Pelletti,* the combination of factors which supported the . finding of wanton misconduct were intoxication, gross incapacity of observation, grossly excessive speed and flight from the scene.

■ In the case at bar plaintiff would match those factors with operating a motorcycle (1) 30 miles an hour, (2) on a narrow street, (3) that was fairly well lighted (an issue over which there was some dispute), (4) in a densely populated area, (5) being an unlicensed operator, (6) carrying a passenger. Of course, there was no evidence of any causal connection between factors 5 and 6 and the injury to plaintiff. The combination of the remaining factors simply does not present a picture of a defendant who harbors an intent to do an act with a wanton and reckless disregard of its consequences or who intentionally does an act with the knowledge that serious injury is a probable result. (*Cope* v. *Davison,* 30 Cal.2d 193 [180 P.2d 873, 171 A.L.R. 667]; *People* v. *Young,* 20 Cal.2d 832 [129 P.2d 353]; *Meek* v. *Fowler,* 3 Cal.2d 420 [45 P.2d 194].) At the most, the defendant here could be said to have failed to exercise care—in brief, negligence. ■ The difference between wanton misconduct and ordinary negligence is substantial and qualitative. (*Williams* v. *Carr,* 68 Cal.2d 579, 583 [68 Cal.Rptr. 305, 440 P.2d 505].) ■ The trial court was correct in refusing to instruct on wanton misconduct.

## Last Clear Chance

Plaintiff next seeks to extricate himself from his own negligence by invoking the doctrine of last clear chance.

██ "The doctrine of last clear chance may be invoked if, and only if, the trier of facts finds from the evidence: (1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossble for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure." *Brandelius* v. *City & County of S. F.,* 47 Cal.2d 729 [306 P.2d 432].

██ Whether the issue should be submitted to the jury depends on whether there is substantial evidence to support the conclusion that *all* of the elements of the doctrine are present. (*Desherow* v. *Rhodes,* 1 Cal.App. 3d 733 [82 Cal.Rptr. 138]; *Wechlo* v. *Winyard,* 33 Cal.App.3d 990 [109 Cal.Rptr. 462].) Again the trial judge is required to evaluate the evidence and his conclusion thereon is entitled to deference at our hands.

██ By plaintiff's own admission he heard the sound of the approaching motorcycle but "did nothing to get out of the way." Thus he was not in a position of peril from which he could not by the exercise of ordinary care extricate himself. Further there was no substantial evidence that defendant had knowledge of plaintiff's predicament in time to avoid the collision. (See *Fry* v. *Young,* 267 Cal.App.2d 340 [73 Cal.Rptr. 62].)

"The doctrine of last clear chance does not apply to splitting seconds; when the emergency arises and there is no substantial evidence that the defendant had time to avoid the collision, the doctrine of last clear chance does not apply." (*Godinez* v. *Soares,* 216 Cal.App.2d 145, at p. 152 [30 Cal.Rptr. 767].)

The trial judge correctly refused to submit the issue of last clear chance to the jury.

## The Duties of Pedestrians and Motorists

Plaintiff's complaint as to the trial court's instructions on the specific duties of motorists and pedestrians appears to be make-weight in support of his major contentions which have been disposed of.

The trial court fully and fairly instructed the jury in the language of the applicable vehicle code sections and approved BAJI instructions. The principles contained in plaintiff's proposed instructions which were refused were adequately covered by instructions which the court gave. Any error which may have occurred, and we perceive none, was harmless beyond doubt and no miscarriage of justice resulted. (Cal. Const., art. VI, § 13.)

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 20, 1974. Clark, J., did not participate therein.