[Civ. No. 54495. Second Dist., Div. Two. Sept. 14, 1979.]

JOHNS-MANVILLE SALES CORPORATION PRIVATE
CARRIAGE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
RAYMOND W. HORENBERGER, Respondents.

[Civ. No. 55123. Second Dist., Div. Two. Sept. 14, 1979.]

FRED HARVEY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
MAXCINE V. RANDELL, Respondents.

924

926

## COUNSEL

Jones, Nelson, Endres & Sisk, Jones, Nelson, Sisk & Ford, Kennis T. Jones, Rowen, Swanson & Rose, Joel D. Swanson and Harold T. Ross for Petitioners.

Richard W. Younkin, William B. Donahoe, Dexter W. Young, Ghitterman, Schweitzer & Herreras, Herreras & Spatafore, William A. Herreras and Pamela M. Hanover for Respondents.

## OPINION

**FLEMING, J.**—Petitioning employers seek review of findings by the Workers' Compensation Appeals Board that their respective employees were injured as the proximate result of serious and willful misconduct by the employers (Lab. Code, § 4553[1]). While the two injuries are unrelated, we issued a consolidated writ of review because of the similarity of the basic issue presented.

I. *Proceedings Before the Appeals Board.*

A. *Maxcine V. Randell* v. *Fred Harvey, Inc.*

In April 1973 Randell, while employed as a cook and cook supervisor by Fred Harvey, Inc. (Harvey), sustained injury to her back in the course of her employment. The workers' compensation judge found that "[t]his injury was proximately caused by the serious and willful misconduct of

---

[1]Unless otherwise specified, all references are to the Labor Code.

Section 4553 provides: "The amount of compensation otherwise recoverable shall be increased one-half where the employee is injured by reason of the serious and willful misconduct of any of the following:

"(a) The employer, or his managing representative.

" . . . . . . . . . . . . . .

"But such increase of award shall in no event exceed ten thousand dollars ($10,000) . . . ."

the employer in that employer Fred Harvey, Inc., through its Managing Representative Prem Bakishi, willfully failed to furnish applicant [Randell] with a safe place of employment in violation of sections 6400, 6401, 6402, 6403, and 6404 of the Labor Code." Based upon this finding, the judge pursuant to section 4553 increased Randell's compensation award by $10,000. The Workers' Compensation Appeals Board (appeals board) denied Harvey's petition for reconsideration.

The finding of serious and willful misconduct by Harvey centers on the maintenance of an ice machine and ice crusher at the golf course snack bar where Randell worked. Randell, who was in direct charge of the snack bar, prepared sandwiches, cooked, and was responsible for keeping the snack bar clean. Her immediate superior, Prem Bakishi, was the general manager of Harvey's local facility, which included the snack bar, a restaurant, and a golf course.

The ice crusher would spew out ice unless its lid were properly pulled down. On occasion employees would drop ice when getting it from the ice machine. Sometimes the ice machine leaked water. When one of these events occurred the walkway between the lunch counter and the kitchen would become slippery. On several occasions Randell told Bakishi the ice machine needed to be fixed. Randell also suggested the ice machine be moved outside. Bakishi rejected this latter suggestion, because it would require employees to walk an excessive distance to get ice. He did send a maintenance man to work on the machine a time or two, but the latter "never could do any good with it." Other than this, Bakishi took no remedial action.

On the day of her injury Randell, while shovelling ice from the ice machine into the ice crusher, dropped some ice on the floor. She partially cleaned up the spilt ice and put towels and gunny sacks around the ice machine. Later, as she was carrying a case of milk, lettuce, lunch meats, etc. she slipped and fell on the melting ice in the walkway next to the ice machine. After her fall she noticed "there was two or three pieces there that [she] had missed" when cleaning up the ice she had dropped.

B. *Horenberger* v. *Raymond I. Ruh Company; Johns-Manville Sales Corporation.*

Horenberger, a truck driver employed by Raymond I. Ruh Company (Ruh Company) as his general employer and by Johns-Manville Sales

Corporation Private Carriage (J-M) as his special employer, injured his left knee when he fell in a dark truck yard. The workers' compensation judge found "[t]his injury was proximately caused by the serious and willful misconduct of the special employer [J-M], in that Ray Bailey, [J-M's] managing representative, knowingly failed to furnish a safe place to work in accordance with [sections] 6400-6404 since he was aware of the dangerous conditions existing in the trucking yard from inadequate lighting but failed to take obvious and corrective measures."

The accident occurred at night in March 1976 when Horenberger tripped over a hose in the unlit truck yard. The yard was owned by Lompoc Truck Company (Lompoc Truck), which leased both the yard and a number of trucks to J-M, but which retained control of the yard's shop/office building in which the light switches for the yard were located. Ruh Company supplied truck drivers to J-M under written contract. A Ruh Company truck driver, when given an assignment by a dispatcher from J-M, would go to the yard, open the gate, obtain truck keys from a key box in the yard, and drive the truck to his assignment, usually the haul of a loaded truck trailer from a J-M facility to its destination. Trucks were regularly picked up from the yard at night.

At a 1977 hearing on Horenberger's claim against Ruh Company for increased compensation for serious and willful misconduct Horenberger testified he was injured when he tripped over a hose in the dark; he had complained many times to Raymond I. Ruh of Ruh Company about the lack of adequate lighting in the yard; prior to his injury another employee had tripped in the yard as a result of inadequate lighting. On behalf of the employer, Ruh testified he could not recall ever having received a complaint about the lighting; but if he had, he would have referred the complaint to J-M, because he did not have a key to the shop/office in which the light switch was located. George Vance of Lompoc Truck testified he had leased the truck yard to J-M; he did not recall anyone complaining about the lack of lighting at night, but he acknowledged that the lighting was there for safety and other reasons; J-M had asked him to put a light over the key box and had paid for its installation. At this hearing, the workers' compensation judge, taking the view that J-M was a special employer which might be liable for serious and willful misconduct, suggested that J-M be brought in as an added party.

At a further hearing in 1978 Vance of Lompoc Truck testified that prior to Horenberger's injury the union had requested lights at night, and he had told Bailey, the senior dispatcher for J-M, about the request; he "thought" he told Bailey that Lompoc Truck would not light the yard but that J-M could put up lights or put a light switch on the outside of the shop/office at its own expense. Bailey of J-M testified he had attended a safety meeting with the union at which the shop steward brought up the absence of lighting in the truck yard; a few days later he talked with a representative of Lompoc Truck, who assured him the lights would be turned on at night.

On this record the workers' compensation judge found J-M guilty of serious and willful misconduct and denied J-M credit for any portion of the settlement it had made with Horenberger in a civil tort action based on the same accident.

II. *The Meaning of Serious and Willful Misconduct.*

■ These cases present the common question of the type of conduct that can amount to serious and willful misconduct under section 4553. While the weight of evidence in support of a claim of misconduct presents an issue of fact for resolution by the appeals board, determination of the minimum elements necessary to constitute serious and willful misconduct presents a question of law for the courts. (*Mercer-Fraser Co. v. Industrial Acc. Com.* (1953) 40 Cal.2d 102, 114-115 [251 P.2d 955]; 2 Hanna, Cal. Law of Employee Injuries & Workmen's Comp. (2d rev. ed. 1979) § 17.02[2][a], pp. 17-10 to 17-11.)

■ Under general state law willful misconduct has a well-established meaning which is clearly differentiated from negligence and gross negligence. (*Donnelly* v. *Southern Pacific Co.* (1941) 18 Cal.2d 863, 869 [118 P.2d 465]; *Savage* v. *Van Marle* (1974) 39 Cal.App.3d 241, 245 [114 Cal.Rptr. 51]; Civ. Code, § 2175.) Gross negligence involves a failure to act under circumstances that indicate a passive and indifferent attitude toward the welfare of others. Negative in nature, it implies an absence of care. (*Weber* v. *Pinyan* (1937) 9 Cal.2d 226, 232-233 [70 P.2d 183, 112 A.L.R. 407]; *Traxler* v. *Thompson* (1970) 4 Cal.App.3d 278, 287 [84 Cal.Rptr. 211].) Willful misconduct, on the other hand, requires an intentional act or an intentional failure to act, either with knowledge that serious injury is a probable result, or with a positive and active disregard for the consequences. (*Meek* v. *Fowler* (1935) 3 Cal.2d 420, 425-426 [45

P.2d 194]; *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 402 [143 Cal.Rptr. 13, 572 P.2d 1155]; Veh. Code, § 17158.) "No amount of descriptive adjectives or epithets may turn a negligence action into an action for intentional or wilful misconduct." (*Mahoney* v. *Corralejo* (1974) 36 Cal.App.3d 966, 973 [112 Cal.Rptr. 61].)

■ The supplemental award to an injured employee for the serious and willful misconduct of his employer is analogous to an award for punitive damages in tort actions. (Civ. Code, § 3294; *Azevedo* v. *Abel* (1968) 264 Cal.App.2d 451, 459-460 [70 Cal.Rptr. 710].) But punitive damages require both an intent to act and malice. ■ The malice in Civil Code section 3294 is defined as intent to vex, injure, or annoy, or as criminal indifference toward an obligation owed another. Mere negligence or recklessness will not suffice. (*G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 32 [122 Cal.Rptr. 218]; *Ebaugh* v. *Rabkin* (1972) 22 Cal.App.3d 891, 894-895 [99 Cal.Rptr. 706].)

These general principles have been followed by the courts in construing those provisions of the workers' compensation law that adjust compensation awards for serious and willful misconduct. (Lab. Code, §§ 4553, 4551.) Two leading Supreme Court opinions authoritatively define the meaning of the phrase *serious and willful misconduct*. In the first, *Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102 [251 P.2d 955], a building collapsed during construction because its temporary guy-wire bracing was inadequate to withstand strong winds. The commission upheld employee claims for increased compensation on the theory that the employer had been guilty of serious and willful misconduct. ■ In reviewing the propriety of these awards the court first noted that the workers' compensation statute does not make the employer an insurer of the safety of his employees and does not authorize an additional award upon a showing of mere negligence or even gross negligence. (P. 108.) An award for serious and willful misconduct, although denominated increased compensation, is actually a penalty. (P. 108.)

" ' "Wilful misconduct" means something different from and more than negligence, however gross. The term "serious and wilful misconduct" is described . . . as being something "much more than mere negligence, or even gross or culpable negligence" and as involving "conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or

with a wanton and reckless disregard of its possible consequences" . . . The mere failure to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence.' " (P. 117.) Conduct which courts and legislative bodies have traditionally defined and categorized as negligence, however gross, may not be classified as serious and willful misconduct under the workers' compensation law. (Pp. 119-120.) "[S]erious and wilful misconduct is basically the antithesis of negligence, and . . . the two types of behavior are mutually exclusive; an act which is merely negligent and consequently devoid of either an intention to do harm or of knowledge or appreciation of the fact that danger is likely to result therefrom cannot at the same time constitute wilful misconduct; conversely an act deliberately done for the express purpose of injuring another, or intentionally performed either with knowledge that serious injury is a probable result or with a positive, active, wanton, reckless and absolute disregard of its possibly damaging consequences, cannot properly be classed as the less culpable conduct which is termed negligence. It follows that a finding of serious and wilful misconduct cannot be sustained upon proof of mere negligence of any degree." (P. 120.)

Applying these legal principles, the court annulled the commission's finding that the employer had been guilty of serious and willful misconduct in failing to furnish a safe place to work. (Lab. Code, §§ 6400-6403.)

In the second case, *Hawaiian Pineapple Co. v. Ind. Acc. Com.* (1953) 40 Cal.2d 656 [255 P.2d 431], an award for serious and willful misconduct had been made by the commission for an employee injury that had resulted from an intersection collision in a cannery plant between a forklift truck and a switch engine. The employer had been warned of poor visibility at the intersection, but had neglected to station a watchman on duty at the intersection during the slack season. The court reiterated the legal proposition that serious and willful misconduct denotes a greater degree of culpability than negligent or grossly negligent conduct. Willful misconduct said the court, involves the performance of an act with an intent that the act be harmful or with a positive, active disregard for its consequences.

"A 'reckless disregard' of the safety of employees is not sufficient in itself unless the evidence shows that the disregard was more culpable than a careless or even a grossly careless omission or act. It must be an

affirmative and knowing disregard of the consequences. . . . The evidence and the findings of the commission do not show that the employer had the knowledge of the consequences of its act or omission necessary to make the performance of that act or omission a wilful one." (Pp. 663-664.)

█ The basis for serious and wilful misconduct has been aptly summarized as including three alternatives: "(a) a deliberate act for the purpose of injuring another; (b) an intentional act with knowledge that serious injury is a probable result; or (c) an intentional act with a positive and reckless disregard of its possible consequences." (*Dowden v. Industrial Acc. Com.* (1963) 223 Cal.App.2d 124, 130 [35 Cal.Rptr. 541]; *American Smelting & Refining Co.* v. *Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 615, 620 [144 Cal.Rptr. 898].) It follows that an employer guilty of serious and willful misconduct must know of the dangerous condition, know that the probable consequences of its continuance will involve serious injury to an employee, and deliberately fail to take corrective action. (*Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) *supra,* 40 Cal.2d 102; *Hawaiian Pineapple Co.* v. *Ind. Acc. Com.* (1953) *supra,* 40 Cal.2d 656; *Dowden* v. *Industrial Acc. Com., supra,* pp. 130-131; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1979) § 17.02[2][a].)

With these legal principles in mind we return to the facts of the cases before us.

III. *Lack of Serious and Willful Misconduct by Harvey.*

█ Bakishi, Harvey's managing representative, was aware that the condition and location of the ice machine at the snack shop constituted a hazard for passing employees, who might slip and fall on leaking water or on ice that had spewed out of the machine. He sent a mechanic to fix the leak and adjust the ice machine, but his action was ineffective in remedying the condition. He also neglected to make secure the adjoining walkway, either by putting down duckboards or moving the ice machine elsewhere. Yet his ineffective action and his inaction, even when measured by the most demanding yardstick, do not constitute anything more heinous than neglect to satisfactorily solve the relatively minor problem of eliminating the risk of slip-and-fall at a particular location. Patently, the elements of deliberate intent to injure, of cavalier disregard

for human safety, or of willingness to risk injury to increase profits, are all lacking. Indeed, it is hard to imagine a better example of simple negligence than failure to fix a water leak that might lead to the slip-and-fall of a passerby.

Apparently, the workers' compensation judge adopted the theory that every continuing failure to furnish a safe place to work by correcting a known defect amounts to serious and willful misconduct on the part of the employer. (Lab. Code, §§ 6400-6404.) We agree such a theory would be appropriate in instances of a known defect possessing the potentiality for serious and deadly harm, such as continued leakage of explosive gas, instability in the foundations of a building, sagging high tension wires, or storage of highly inflammable materials in a theater basement. Failure to correct such defects on discovery is the type of massive failure that qualifies as quasi-criminal conduct and can justify an increased award for serious and willful misconduct. ■ But not every failure to correct known defects in the workplace amounts to serious and willful misconduct. Were such the law the distinction between negligence and willful misconduct in workers' compensation law would largely disappear. We do not believe failure to correct a minor sporadic defect in the walking surface of the working area of a place of employment, even when that defect has been called to the attention of the employer, can warrant a finding of serious and willful misconduct. We, therefore, conclude there is not sufficient evidence to support the finding of serious and willful misconduct by the employer Harvey.

■ A further factor precludes recovery. Even if we assume that failure to remedy a known slippery walking surface can qualify as serious and willful misconduct, a claimant must establish that such failure was the proximate cause of her injury. (2 Hanna, *op. cit., supra* § 17.02[2][c]; 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) § 11.15.) Here, the proximate cause of the injury was not the defective ice machine but Randell's failure to clean up ice she herself had spilled, a cleanup for which she bore direct responsibility. No matter how aggravated Bakishi's neglect in failing to effectively repair the leaking and balky ice machine, his neglect was not the proximate cause of Randell's injury.

IV. *Lack of Serious and Willful Misconduct by J-M.*

■ The workers' compensation judge found J-M, the special employer, guilty of serious and willful misconduct in failing to keep its leased yard illuminated on nights contract drivers were required to pick

up trucks. The basis for the finding was that J-M had been advised of the hazard of walking in the dark yard at night, had done nothing effective to remedy the condition, and therefore had knowingly failed to furnish its special employee a safe place to work. The hazard here was trip-and-fall rather than slip-and-fall, in that the walkway of the truck yard had hoses and other objects on which a driver might stumble in the dark. J-M's representative, having been told about the hazard of trip-and-fall in the unlit yard, had taken the ineffective action of asking a representative of Lompoc Truck, the lessor of the yard, to turn on the lights at night. As in *Harvey*, the workers' compensation judge concluded that failure to furnish a safe place to work by correcting a known defect constituted serious and willful misconduct.

Here again, we have nothing more than a classic instance of neglect, containing no element of malice, recklessness, or indifference to human safety. The fact of the matter is that effective corrective action was lost somewhere in the interstices of the tripartite arrangement for operation of the yard, and that J-M neglected to make certain that effective corrective action was accomplished. In the exercise of due care J-M should have done more than it did to ensure that the yard was properly illuminated at night. But its failure to take effective action to remedy a routine defect does not amount to serious and willful misconduct. (See *Hawaiian Pineapple Co. v. Ind. Acc. Com., supra,* 40 Cal.2d at pp. 664-665.) We conclude that failure to furnish sufficient lighting in the truck yard and thereby eliminate the known hazard of trip-and-fall, amounted to nothing more than simple negligence, and that the award against J-M for serious and willful misconduct must be annulled. In view of this conclusion, we do not reach J-M's claim that it is entitled to a credit for the amount of its settlement in the civil tort action.

In each case the award for serious and willful misconduct is annulled.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied October 12, 1979, and respondents' petitions for a hearing by the Supreme Court were denied November 15, 1979. Bird, C. J., was of the opinion that the petitions should be granted.