[No. B190060. Second Dist., Div. Two. Oct. 25, 2006.]

PRISCILLA SABABIN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
COVINA REHABILITATION CENTER, Real Party in Interest.

## COUNSEL

Maher Guiley & Maher, Steven R. Maher, William M. Artigliere; Esner & Chang, Stuart B. Esner and Andrew N. Chang for Petitioners.

No appearance for Respondent.

Giovanniello & Michels, Helen A. Michels, Karen A. Bocker, Kelene M. Stevens and B. Eric Nelson for Real Party in Interest.

## OPINION

**ASHMANN-GERST, J.**—Arlene Renteria (Renteria) was diagnosed with Huntington's chorea, a disease that subjected her to the risk of skin deteriora-

tion. Though there is a conflict of evidence that must be resolved by a trier of fact, there is evidence that Renteria was transferred to Huntington East Valley Hospital (East Valley) from Covina Rehabilitation Center (Covina)[1] with sores, ulcers and methicillin-resistant staphyloccocus aureus (MRSA). She died two months later at Kindred Hospital at age 38 due to infection to a sacral decubitus skin ulcer. For three years prior to her admission to East Valley, Renteria was in the care of Covina. Renteria's successors in interest (Renteria's successors)[2] sued Covina for, among other things, dependent adult abuse on the theory that Covina did not satisfy its custodial obligation to meet Renteria's basic needs when it failed to follow the care plan for the maintenance of Renteria's skin.

The trial court granted summary adjudication of the dependent adult abuse cause of action[3] on the ground that there was no evidence that Covina was guilty of something more than professional negligence. Renteria's successors challenge the trial court's order by way of the instant writ petition, contending, inter alia: (1) there are triable issues as to whether Covina's employees acted with recklessness, oppression or malice when they failed to follow the care plan Covina established for maintaining the health of Renteria's skin,[4] and (2) there are triable issues as to whether Covina can be held liable for the conduct of its employees.

■ After careful review, we agree with Renteria's successors. We conclude that there are triable issues as to whether Covina's employees were guilty of reckless, oppressive or malicious neglect because there is evidence that they failed to follow Renteria's care plan for maintaining the health of her skin. Accordingly, we conclude that this is proper case for issuance of a peremptory writ.

Upon remand, the trial court shall consider Covina's argument that it is not liable for its employees' conduct.[5]

---

[1] Covina Care Center, Inc., and Sunbridge Care do business as Covina.

[2] The successors in interest are Priscilla Sababin, Carmen Escobedo, Tony Mesa and Dean Mesa.

[3] Renteria's successors sought remedies under Welfare and Institutions Code section 15657. All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[4] This contention is not specifically made by Renteria's successors, but they broadly make it by referring to the evidence they provided below pertaining to Covina's failure to follow its care plan.

[5] This opinion was originally filed as a nonpublished opinion on September 13, 2006. We received numerous requests for publication that were well taken because attorneys and trial courts in elder and dependent abuse cases have struggled with the distinction between neglect and professional negligence. The requests revealed that attorneys and trial courts would benefit if we elaborated on certain points in our prior, nonpublished opinion. Rather than issue a

## FACTS

*Background*

Huntington's chorea is a genetic disorder characterized by uncontrolled movements, progressive dementia, psychiatric problems, and psychoses caused by the degeneration of nerve cells in the brain. In general, there is loss of cognitive and mental functions. People affected with this disorder are at increased risk for infection and weight loss.

Renteria had aphasia and dysphagia. She needed a gastrostomy tube and was dependent upon others for nutrition and hydration. On June 16, 2000, she was transferred from Specialty Hospital of Southern California to Covina. At the time, she was 93 pounds. By April 16, 2001, her weight had fallen to 75.4 pounds. After her diet was adjusted, her weight increased to approximately 105 pounds. Toward the end of 2002, her tube feedings were reduced. When she was weighed on February 28, 2003, she was down to 91 pounds.

Renteria's care plan indicated that Covina employees would monitor her skin on a daily basis for redness or breakdown and report to a physician for a treatment order in the event of skin problems. In late February 2003, Renteria developed diarrhea. Her condition did not improve, and she was transferred to East Valley. When Renteria was admitted to the emergency room at East Valley on March 2, 2003, she had lacerations on her toes and feet and had poor skin condition on both buttocks, which were dark red and squishy. Covina had no documentation of those conditions, nor had a physician been notified for a treatment order. East Valley noted that Renteria had a pustule with MRSA on her left hand. When she was placed in a room five hours after admission to the emergency room, East Valley discovered reddened skin on Renteria's sacral area.

*The second amended complaint*

In the fourth cause of action for abuse of a dependent adult, the second amended complaint averred: When Renteria was admitted to East Valley, she was diagnosed with acute infective diarrhea, an infected stage IV decubitus ulcer on her left hand, a left hand pustule, dehydration, renal failure, and an electrolyte imbalance. A wound culture revealed the presence of MRSA in her

---

piecemeal modification, we opted to grant rehearing on our own motion under California Rules of Court, rule 25(a), vacate the September 13, 2006 opinion, and issue a new and revised opinion.

left hand. Renteria was found to be 82 percent underweight. Pressure ulcers and a low albumin indicated that she was suffering from visceral protein malnutrition. There were pressure sores on her buttocks area. As well, she had vaginal bleeding. Her pubic hair had been shaved; a gynecological exam revealed a small abrasion on Renteria's left minor labia. She died a few months later. The cause of death was MRSA sepsis to an infected sacral skin ulcer. Her pain and subsequent death were caused by Covina's willful failure to provide her with necessary care.

*Covina's motion for summary adjudication*

In support of its motion for summary adjudication of the fourth cause of action,[6] Covina argued: Huntington's chorea is a devastating genetic degenerative brain disorder that is characterized by uncontrolled movements, progressive dementia, and psychoses. There is no known cure for Huntington's chorea, and it is usually fatal 10 to 15 years after its onset. Renteria was diagnosed in her early 20's, and when she died she was at the end stage of the disease. When she was admitted to East Valley's emergency room, the care providers did not indicate any problems regarding Renteria's sacral area. After she was admitted, redness in her sacral area was noted for the first time. Her skin remained intact for several days until her sacral area developed a stage III decubitus ulcer. Renteria did not suffer the decubitus ulcer, or abuse, malnutrition, dehydration and infections at Covina. Covina complied with the standard of care. Her nutritional status was maintained to the highest practical degree considering her disease. She suffered dehydration due to a bout of diarrhea, a condition that was being treated.

Covina cannot be held liable under the elder and dependent adult abuse statutes unless it injured Renteria due to a total absence of care. Moreover, dependent adult abuse arises in the context of custodial care, not in the context of professional negligence. Neglectful adult dependent care is the failure to attend to the basic needs and comfort of dependent adults. Covina never failed to provide Renteria with her basic needs; i.e., there is no evidence of custodial neglect. Finally, Renteria's successors have no evidence that Covina ratified any wrongful acts allegedly committed by its employees.

Dr. J. Thomas Millington reviewed Covina's records and declared: (1) Renteria was turned and repositioned on a regular basis; (2) she was

---

[6] Covina also moved for summary judgment.

monitored and her status was reported to her physician and family; (3) she was given regulated feedings to maintain nutrition and hydration; and (4) her skin condition was checked on a regular basis and her bed was padded.

*Renteria's successors' opposition*

In opposition, Renteria's successors argued that Covina was guilty, inter alia, of the following: (1) failure to provide medical care for her physical and mental health needs; (2) failure to protect her from health and safety hazards; and (3) failure to reposition her.

They pointed out that Covina violated multiple nursing home regulations, some of which resulted in deficiency findings by the Department of Health Services (Department). According to the Department's findings: Covina had a care plan which required Renteria's skin to be monitored every day for redness and skin breakdown. A physician was to be notified if there was a need for a treatment order. Nonetheless, when Renteria was admitted to East Valley, she had red, squishy buttocks, a bleeding toe, and a bruised and reddened foot. Covina had no documentation of these conditions, and the medical chart revealed that a physician was never contacted for a treatment order.

*The order granting summary adjudication*

The trial court granted summary adjudication of the dependent adult abuse cause of action on the grounds that the evidence offered by Renteria's successors showed nothing more than negligence.

This writ petition followed.

## STANDARD OF REVIEW

We review summary adjudication de novo. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001 [67 Cal.Rptr.2d 483].) In doing so, we "consider[] all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]" (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) We accept as undisputed fact only those portions of the moving party's evidence that are uncontradicted by the opposing party. (*Hersant v. Department of Social Services, supra,* at p. 1001.) Additionally,

we strictly construe the moving party's evidence and liberally construe the opposing party's evidence. (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 838 [89 Cal.Rptr.2d 540].)

## DISCUSSION

1. *The applicable law.*

■ Pursuant to the Elder Abuse and Dependent Adult Civil Protection Act (Act), heightened remedies are available to plaintiffs who successfully sue for dependent adult abuse. Where it is proven by clear and convincing evidence that a defendant is liable for neglect or physical abuse, and the plaintiff proves that the defendant acted with recklessness, oppression, fraud, or malice, a court shall award attorney fees and costs. Additionally, a decedent's survivors can recover damages for the decedent's pain and suffering. To recover against an employer, the plaintiff must meet the standards in Civil Code section 3294 for the imposition of punitive damages on an employer based on the acts of an employee. (§ 15657.)

Neglect includes the failure to assist in personal hygiene, or in the provision of food, clothing, or shelter; the failure to provide medical care for physical and mental health needs; the failure to protect from health and safety hazards; and the failure to prevent malnutrition or dehydration. (§ 15610.57.) Physical abuse means, inter alia, assault, battery, prolonged deprivation of food or water, unreasonable physical restraint, or sexual assault. (§ 15610.63.)

The Act excludes liability for acts of professional negligence. (§ 15657.2; *Delaney v. Baker* (1999) 20 Cal.4th 23, 32 [82 Cal.Rptr.2d 610, 971 P.2d 986] (*Delaney*).)[7] Hence, it does not apply to simple or gross negligence by health care providers. (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 785 [11 Cal.Rptr.3d 222, 86 P.3d 290] (*Covenant Care*).)

■ To obtain the remedies provided by the Act pursuant to section 15657, "a plaintiff must demonstrate by clear and convincing evidence that defendant is guilty of something more than negligence; he or she must show reckless, oppressive, fraudulent, or malicious conduct." (*Delaney, supra,* 20

---

[7] Section 15657.2 provides: "Notwithstanding this article, any cause of action for injury or damage against a health care provider, as defined in Section 340.5 of the Code of Civil Procedure, based on the health care provider's alleged professional negligence, shall be governed by those laws which specifically apply to those professional negligence causes of action."

Cal.4th at p. 31.) Recklessness refers "to a subjective state of culpability greater than simple negligence, which has been described as a 'deliberate disregard' of the 'high degree of probability' that an injury will occur." (*Ibid.*) Oppression, fraud and malice involve intentional or conscious wrongdoing of a despicable or injurious nature. (*Ibid.*)

Our Supreme Court teaches that neglect under the Act "refers not to the substandard performance of medical services but, rather, to the 'failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations.' [Citation.] Thus, the statutory definition of 'neglect' speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care. [Citation.]" (*Covenant Care, supra*, 32 Cal.4th at p. 783.)

2. *Reckless, oppressive or malicious neglect.*

Renteria's successors contend that there are triable issues as to whether Covina's employees' conduct constituted invidious neglect as defined by section 15610.57. In counterpoint, Covina argues that the allegations at issue involve nothing more than professional negligence.

We turn to these issues.

According to the Department's April 28, 2003 survey, Renteria's December 19, 2002 care plan "indicated that staff would monitor skin daily for redness or breakdown and report to the physician for a treatment order."[8] It was noted that on admission to East Valley, Renteria "had lacerations on her toes and feet with poor skin condition on both buttocks" and that a nurse stated that "the buttocks area was dark and red and felt squishy." Also, her heel was bruised and had areas of redness. Despite the foregoing, Covina did not have any documentation of Renteria's skin condition. When Covina's treatment nurse was interviewed, she stated that she had not done a skin condition report for Renteria and was not aware of Renteria's reddened buttocks. A review of Covina's records indicated that there was no evidence of Renteria's

---

[8] We do not hold, as tacitly suggested in various letters requesting publication of this opinion, that the Department's records are per se admissible in a summary judgment motion. Neither party in this case suggests that Covina objected to the Department's records. Also, our independent search of the record failed to turn up any objections, let alone an order sustaining such objections. When evidence is not objected to, it must be considered in connection with a motion for summary judgment. Code of Civil Procedure section 437c, subdivision (c) provides in pertinent part: "In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court."

right foot condition or reddened buttocks. Renteria's medical chart revealed that no one at Covina notified a physician of the need for a treatment order.

In determining whether there are any triable issues, we are required to consider the reasonably deducible inferences from the evidence. (Code Civ. Proc., § 437c, subd. (c).) From the Department's survey, it is reasonably deducible that Covina's employees neglected to follow the care plan by failing to check Renteria's skin condition on a daily basis and failing to notify a physician of the need for a treatment order. Thus, there is a triable issue as to whether Covina's employees' conduct was neglect under section 15610.57 because they failed to provide Renteria with medical care for physical needs and to protect her from health and safety hazards. Moreover, when the evidence and inferences are liberally construed, we easily conclude that there is a triable issue as to whether Covina's employees acted with recklessness, oppression or malice. A trier of fact could find that when a care facility's employees ignore a care plan and fail to check the skin condition of a resident with Huntington's chorea, such conduct shows deliberate disregard of the high degree of probability that she will suffer injury. Though Covina offers conflicting declarations regarding the care provided, we are not permitted to weigh the evidence.

Covina contends that under *Covenant Care*, a care facility cannot be held liable for dependent abuse unless there is a total absence of care. We disagree. If some care is provided, that will not necessarily absolve a care facility of dependent abuse liability. For example, if a care facility knows it must provide a certain type of care on a daily basis but provides that care sporadically, or is supposed to provide multiple types of care but only provides some of those types of care, withholding of care has occurred. In those cases, the trier of fact must determine whether there is a significant pattern of withholding portions or types of care. A significant pattern is one that involves repeated withholding of care and leads to the conclusion that the pattern was the result of choice or deliberate indifference.

The other issues of neglect are moot.

3. *Employer liability.*

Due to its ruling on neglect, the trial court did not assess the evidence for triable issues as to Covina's liability for the conduct of its employees. Consequently, we grant Renteria's successors' petition for writ of mandate and remand for the trial court to determine whether Covina's motion for summary adjudication eliminates a triable issue as to employer liability.

## DISPOSITION

This is a proper case for issuance of a peremptory writ in the first instance. (Code Civ. Proc., § 1088; *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177–180 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of mandate issue, directing the respondent court to vacate its order of February 17, 2006, granting Covina's motion for summary adjudication of Renteria's successors' fourth cause of action for dependent adult abuse, and to issue a new order setting a hearing to determine whether Covina's motion for summary adjudication eliminates a triable issue as to employer liability. Renteria's successors are to receive their costs on appeal.

The stay heretofore issued is vacated.

Boren, P. J., and Chavez, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied January 3, 2007, S148458. Corrigan, J., did not participate therein.