Filed 8/31/16  Thomas v. Country Villa Service Corp. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| BERTHA EVANS THOMAS, as Successor in Interest, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTRY VILLA SERVICE CORP., <br><br> Defendant and Respondent. | B264749 <br><br> (Los Angeles County <br> Super. Ct. No. BC519066) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ross M. Klein, Judge.  Affirmed.

Balisok & Associates and Russell S. Balisok; Law Office of Denise A. Platt and Denise Platt Maginn for Plaintiff and Appellant.

LeVangie Law Group, Michael J. LeVangie and Jason Yang, for Defendant and Respondent.

Plaintiff Leonard Thomas (Thomas), an elderly man suffering from Parkinson's Disease, was admitted to a skilled nursing facility alleged to be under the operational control of defendant Country Villa Service Corporation (CV Corporation).  After a seven-week stay, he developed pressure sores and a urinary tract infection; he also lost 13 pounds and experienced delay in getting a cast on his leg removed.  Thomas sued CV Corporation and other defendants, asserting causes of action for negligence, willful misconduct, fraud, and elder abuse.  The trial court sustained CV Corporation's demurrer to all but the negligence cause of action, and when Thomas thereafter died, his successor in interest stipulated the trial court should enter a judgment of dismissal because Thomas could no longer pursue general damages on the negligence cause of action the trial court allowed to proceed.[1]  Thomas appeals the demurrer ruling and we consider whether the operative complaint states facts sufficient to constitute a proper cause of action on the non-negligence theories of liability.

## I.  BACKGROUND

### A.    *The Initial Complaint*

Thomas filed his initial complaint in August 2013.  Among the named defendants were CV Corporation, a management company, and Country Villa South Bay, LLC (CV South Bay), a related entity that obtained the license from the State of California to operate the nursing facility in question.  The complaint alleged seven causes of action: (1) negligence; (2) willful and reckless misconduct (elder abuse); (3) violation of patient's

---

[1]      Bertha Evans Thomas, Thomas's wife, served as his guardian ad litem during the litigation.  When Thomas died of cardiopulmonary arrest not long after the trial court's ruling on the demurrer, Bertha Evans Thomas became his successor in interest pursuant to Code of Civil Procedure section 377.32.  In the discussion that follows, and for simplicity's sake, we consistently refer to Thomas as if he were the party pursuing this appeal even though Bertha Evans Thomas is the actual appellant as his successor in interest.

rights under Health and Safety Code section 1430, subdivision (b);[2] (4) constructive fraud; (5) fraudulent concealment; (6) fraudulent misrepresentation to a licensing agency; and (7) elder abuse. Country Villa demurred to all but the first cause of action for negligence, and the trial court sustained the demurrer with leave to amend. Central to the trial court's ruling was its conclusion that the absence of sufficient factual allegations, and the lack of greater specificity in certain facts that were alleged, rendered the non-negligence causes of action defective.

### B.  *The Operative Complaint*

Thomas thereafter filed a First Amended Complaint (the operative complaint) alleging the same seven causes of action against the same defendants. The operative complaint's preliminary allegations described the parties to the lawsuit. As relevant here, the preliminary allegations stated CV Corporation had assumed operational control of the skilled nursing facility housing Thomas (the Facility) under the terms of a written agreement with CV South Bay.

#### 1.  *The negligence cause of action*

The first cause of action for negligence contains the bulk of the facts concerning Thomas's treatment at the nursing facility. Although the viability of the negligence cause of action is not a question before us in this appeal, we describe the allegations presented in the paragraphs comprising the negligence cause of action in some detail because the causes of action that are before us incorporate, and indeed depend upon, the facts alleged in Thomas's cause of action for negligence.

---

[2]     The third cause of action was alleged only against CV South Bay, not CV Corporation. Proceedings in the trial court were stayed as to CV South Bay because that entity filed for bankruptcy, and CV South Bay is not a party to this appeal (owing to the bankruptcy stay).

Thomas previously resided at another nursing facility. In October 2012, he sustained a tibial fracture and was admitted to a hospital for treatment. When discharged, Thomas elected to transfer to the Facility for long-term care and rehabilitation for his muscle weakness. When admitted to the Facility on October 14, 2012, he had a cast on his leg and a urinary catheter. Thomas stayed at the Facility until December 4, 2012, when he was readmitted to the hospital for treatment of a urinary tract infection and other medical problems.

Paragraph 12 of the operative complaint (broken into several subparts) describes several ways in which the named defendants allegedly "breached their duty of reasonable care" and "failed to provide care." First, the Facility failed to monitor his urinary catheter, urine volume, and urine character "on a regular basis," and it failed to respond to his severe urinary tract infection by reporting it to a Facility doctor who could prescribe antibiotics or other appropriate treatment. Second, the Facility "failed to assess, monitor and provide for" his nutritional needs, which arose because it was difficult for him to use his hands for feeding. The operative complaint states "Thomas' needs included assistance with feeding at mealtimes and snacktimes, without which Thomas was relegated to watching food trays come and go . . . without being able to participate meaningfully," and it alleges "[a]s a consequence, in the first month of his admission to [the Facility] Thomas lost thirteen pounds." Third, the Facility failed to monitor or report Thomas's heart rate to his physician before he was given medication "that could be harmful to him if taken with a low heart rate." Fourth, the Facility did not assess Thomas's risk of developing pressure sores (more commonly known as bed sores); failed to take measures to prevent development or progression of such sores; and after Thomas developed multiple sores, did not assess or treat them. Although the operative complaint avers the sores were not assessed or treated, it also acknowledges the sores were reported to Thomas's physician, albeit "much later," and that the physician made orders for treatment of the sores, albeit orders that "were not always followed." Fifth, the Facility failed to assess and monitor Thomas's leg cast, which meant the cast was not removed as

4

early as it should have been. And sixth, the Facility "failed to report the abuse and neglect" of Thomas as required by law even after receiving information that would have led them to suspect he was a victim of abuse and neglect; according to the complaint, the failure was attributable to an internal memo that required staff to report elder abuse or neglect to the Facility's own administrator (who then failed to make reports required by law).[3]

As summarized in the final paragraph of the negligence cause of action, when Thomas was readmitted to the hospital following his stay at the Facility "he was determined to be suffering from malnutrition, dehydration, and a severe urinary tract infection, among other problems cause by the denials of care he experienced as a resident of [the Facility] . . . ."

### 2. *The causes of action at issue*

The remainder of the causes of action alleged against CV Corporation are all predicated on largely the same facts alleged in the first cause of action for negligence.

The second cause of action for willful and reckless misconduct asserts CV Corporation (and the other named defendants) "breached their duty of reasonable care by failing to provide adequate care as alleged above at paragraph 12." New in the second cause of action, however, were paragraphs 22 and 23, which include additional language asserting CV Corporation acted recklessly and with malice:

> 22. At all times relevant, Defendants and each of them, knew or should have known that their failure to comply with their duties as set forth above, with respect to the care and treatment of Thomas, would, given his high degree of dependence upon defendants, create the peril of severe and

---

[3] The paragraphs comprising the negligence cause of action also leveled allegations specifically against Thomas's attending doctor at the Facility, and these allegations pertained to the same subject areas alleged against the Facility (e.g., catheter and urinary tract infection, pressure sores, etcetera). The attending doctor is not a party to this appeal.

5

serious injury to Thomas.  Further, said Defendants and each of them knew or should have known that the said peril posed the high probability that Thomas would sustain serious physical and mental injuries. Notwithstanding the aforesaid duty and knowledge, Defendants and each of them, knowingly and consciously breached their duties to Thomas, as set forth above, and knowingly and consciously disregarded the high probability of injury to Thomas and others, and failed to provide such care, and arrange for the delivery of necessary care, as alleged above at paragraph 12.  Defendants and each of them intentionally breached the aforesaid duty of care.  Their motive in breaching their duties to Thomas was to increase profit by avoiding and saving the costs associated with providing adequate care.

23.     By virtue of the foregoing, Defendants and each of them have acted in conscious and intentional disregard of the probability of injury to Thomas, and others, and because the defendants had a fiduciary duty to Thomas not to allow financial considerations to adversely affect healthcare decision making, and because he was isolated, helpless and injured, their failure and refusal to provide such basic care and services is despicable. Accordingly, Defendants have acted with malice.

Thomas included these allegations (and an allegation that CV Corporation acted oppressively, in a paragraph we have not quoted) in an effort to qualify for heightened remedies available under California's Elder Abuse Act.[4]

The fourth cause of action alleges a claim for constructive fraud.  It, like the second cause of action, incorporates the factual allegations in paragraph 12 of the

---

[4]     We discuss the requirements of the Elder Abuse Act in more detail *post* at Part II.B.  Briefly stated here, the Act allows recovery of additional damages and attorney fees where a defendant is shown by clear and convincing evidence to have acted recklessly, maliciously, fraudulently, or oppressively in neglecting an elder patient.  (Welf. & Inst. Code, § 15657.)

6

operative complaint. The fourth cause of action also includes four new paragraphs asserting CV Corporation had breached a fiduciary duty it owed to Thomas as his healthcare provider. Specifically, Thomas alleges CV Corporation breached its fiduciary duty to him by "secretly" paying itself management fees equal to 6.5% of gross revenue from the Facility's operating revenue while knowing that the money remaining for operations was insufficient to allow the Facility to meet resident needs, including staffing expenses. The constructive fraud cause of action further alleges that, "[a]s a result of the aforesaid conduct," Thomas was deprived of an opportunity to transfer to a different facility that would provide for his needs. Like the second cause of action, the constructive fraud claim includes allegations intended to trigger heightened remedies available under the Elder Abuse Act.

The fifth cause of action for fraudulent concealment is similarly predicated on the facts alleged earlier in connection with the negligence cause of action and the contention that CV Corporation had a fiduciary duty to Thomas. As a result of this fiduciary duty, the operative complaint alleges, CV Corporation was obligated to disclose facts material to Thomas's care and treatment, including the previously identified management fees that allegedly prevented the Facility from meeting the needs of its residents. CV Corporation failed to disclose such facts, motivated by a desire to increase profit, and thereby deprived Thomas of the opportunity to "meaningfully elect" admission to the Facility or to instead seek care elsewhere. As in the second and fourth causes of action, the fifth cause of action includes allegations of malice, fraud, recklessness, and oppression in an effort to obtain Elder Abuse Act remedies.

Thomas's sixth cause of action for fraudulent misrepresentation articulates a theory of liability in which CV Corporation would be held liable not for representations it made to him but for representations CV South Bay made to a third party, namely, the California Department of Public Health (DPH). Specifically, Thomas alleges DPH in the "years prior" to Thomas's admission issued citations to the Facility after inspections revealed deficiencies in complying with state and federal standards of care, including the

7

failure to properly assess and monitor patient conditions, the failure to maintain and update patient care plans, and the "failure to properly prevent, evaluate, and treat pressure sores on multiple patients." Thomas further alleges CV South Bay, at CV Corporation's direction, made representations to DPH that it would comply with healthcare standards and correct these deficiencies when seeking annual renewals of the Facility's license to operate, but that these representations were false when made and that "such corrections were not made or were not effective." According to the operative complaint, without these representations, the Facility would not have been licensed and Thomas would not have entered the Facility as a resident; thus, Thomas alleges, he was "in a class of persons that was foreseeably . . . injured by said Defendants' misrepresentations." In addition, Thomas again includes allegations in his fraudulent misrepresentation claim to trigger heightened remedies under the Elder Abuse Act.

Unlike Thomas's other causes of action that include allegations intended to trigger Elder Abuse Act remedies in connection with at least nominally separate theories of liability, the seventh cause of action alleges a violation of the Elder Abuse Act as an independent cause of action.[5] Thomas alleges CV Corporation "breached [its] duty of reasonable care as alleged above," and includes nearly identical allegations as those in paragraphs 22 and 23, and elsewhere in the complaint, to establish that CV Corporation acted with "neglect" as defined in the Elder Abuse Act and did so recklessly, maliciously, fraudulently, and oppressively.

---

[5]    Thomas proceeded in this fashion, alleging elder abuse both as a predicate for heightened remedies and as a substantive cause of action because there is "a split of authority on whether the Elder Abuse Act creates an independent cause of action or merely provides additional remedies for some other cause of action." (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 403, fn. 6 (*Carter*).) As was the case in *Carter*, our resolution of this appeal does not require us to take a side.

### C. CV Corporation's Demurrer and the Trial Court's Ruling

CV Corporation demurred to the operative complaint. CV Corporation argued Thomas's negligence, willful misconduct, and elder abuse claims were virtually identical and that the facts alleged demonstrated at most negligence despite the operative complaint's addition of "a laundry list of generic 'buzz words'" concerning recklessness, malice, oppression, and fraud. CV corporation further argued Thomas's fraud claims, and the claims predicated on statutory causes of action, failed because they were not pled with sufficient factual specificity.

Thomas's opposition to the demurrer contended the facts alleged were sufficient to demonstrate "denial of reasonably necessary medical care with adequate allegations of culpability." In particular, as to CV Corporation's challenge to the operative complaint's allegations of recklessness, malice, fraud, and oppression, Thomas argued knowledge and intent "are facts and not impermissible conclusions" such that a mere statement CV Corporation acted with the required mental state would be "specific and appropriate."

The trial court issued a tentative ruling sustaining CV Corporation's demurrer to all causes of action against it except the first cause of action for negligence. As to the second and seventh causes of action (willful misconduct and elder abuse), the tentative ruling stated Thomas had not pleaded facts to establish CV Corporation's conduct rose above ordinary negligence. The court recognized paragraph 12 of the operative complaint alleged a series of acts and omissions but concluded the elements of misconduct and elder abuse had not been pled with the requisite particularity, emphasizing the paucity of facts to show CV Corporation "apprehended" Thomas's alleged injuries but consciously failed to act or prevent them. Similarly, as to the fourth and fifth causes of action (constructive fraud and fraudulent concealment), the court's tentative decision concluded Thomas had pled only conclusory allegations that were devoid of the requisite specific facts necessary to constitute a proper cause of action. And as to the sixth cause of action (fraudulent misrepresentation to DPH), the court's tentative concluded the allegations were defective because they did not establish a

9

misrepresentation of present material fact but rather promises concerning future conduct (i.e., to remedy the alleged deficiencies found during DPH inspections) that were not actionable.

At the hearing on CV Corporation's demurrer, the trial court emphasized it "didn't see the proverbial crossing of the line [beyond ordinary negligence] from the facts." Thomas, however, maintained the willful misconduct and elder abuse causes of action were sufficiently pled, pointing in particular to the allegations at paragraphs 22 and 23 (quoted *ante*). In particular, Thomas argued: "[K]nowledge and intent are not conclusions. Those are proper factual allegations. . . . The pleading of intent to do something or pleading that he knew something, knowledge, is adequately pleaded just by simply making those allegations." Thomas also continued to assert the fraud causes of action were properly stated but conceded if the court was inclined to disagree he would stand on the operative complaint as drafted and the court should sustain the demurrer without granting further leave to amend.

That is what the trial court did, adopting its tentative ruling as its final ruling and providing no further opportunity to amend. On the stipulation of the parties, the trial court then granted summary judgment on the sole cause of action for negligence that survived the demurrer. The court entered a judgment of dismissal in favor of CV Corporation from which Thomas now appeals.

## II. DISCUSSION

There was not much dispute in the trial court that Thomas stated facts sufficient to constitute a proper cause of action for negligence, and the viability of such a claim is not an issue on appeal. Rather, the question we decide is whether the other causes of action against CV Corporation, which were predicated on the same core set of facts—albeit accompanied by assertions that CV Corporation's actions and omissions constituted willful, reckless, fraudulent, malicious, and oppressive conduct—should have been held sufficient to withstand the demurrer. After our own independent review, we conclude the

10

answer to that question is "no." Fraud, misconduct, and violations of the Elder Abuse Act must be pled by specific facts, and such facts were lacking in the operative complaint; naked averments that "defendants and each of them" acted or failed to act with the requisite level of culpability do not transform a negligence action into more than it in fact is. Further, the fraud causes of action predicated on the theory that CV Corporation had a fiduciary duty to Thomas fail because (1) precedent does not support the existence of such a duty, at least on the facts alleged here, and (2) Thomas's fraudulent misrepresentation claim is factually deficient as alleged. Because Thomas made no showing of how he might amend the operative complaint, either in the trial court or in his briefs on appeal, we affirm the judgment of dismissal.

A.    *Standard of Review*

"In determining whether plaintiffs properly stated a claim for relief, our standard of review is clear: '"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; see also *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [noting that our review is de novo].)" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) "An appellate court must affirm if the trial court's decision to sustain the demurrer was correct on any theory." (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808.)

11

### B. *The Claims for Willful Misconduct and Elder Abuse*

The elements of a tort claim for willful misconduct are (1) actual or constructive knowledge of peril to be apprehended, (2) actual or constructive knowledge that injury resulting from the danger is probable not just merely possible, and (3) a conscious failure to act to avoid the peril. (*Morgan v. Southern Pac. Transportation Co.* (1974) 37 Cal.App.3d 1006, 1012; see also *New v. Consolidated Rock Products Co.* (1985) 171 Cal.App.3d 681, 689-690.) Thus, "[w]illful misconduct involves more than a failure to use ordinary care; it involves a more positive intent actually to harm another or to do an act with a positive, active, and absolute disregard of its consequences." (*Carter*, *supra*, 198 Cal.App.4th at p. 412, internal quotation marks and citation omitted.) Conclusory statements that a defendant acted willfully do not suffice because a cause of action for willful misconduct must plead specific facts upon which the cause is based. (*Carter*, *supra*, 198 Cal.App.4th 396 at pp. 412-413; *Simmons v. Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341, 361; see also *Johns-Manville Sales Corp. v. Workers' Comp. Appeals Bd.* (1979) 96 Cal.App.3d 923, 931 ["No amount of descriptive adjectives or epithets may turn a negligence action into an action for intentional or [willful] misconduct"].)

At least with respect to the mental state with which a defendant must act for liability to attach, the elements necessary to allege a violation of the Elder Abuse Act are similar. We quote at length from *Carter*'s description of the Act generally and its distillation of what must be alleged to state a violation.

"The Elder Abuse Act makes certain enhanced remedies available to a plaintiff who proves abuse of an elder, i.e., a 'person residing in this state, 65 years of age or older.' (Welf. & Inst. Code, § 15610.27.) In particular, a plaintiff who proves 'by clear and convincing evidence' both that a defendant is liable for physical abuse, neglect or financial abuse (as these terms are defined in the Act) and that the defendant is guilty of 'recklessness, oppression, fraud, or malice' in the commission of such abuse may recover attorney fees and costs. (Welf. & Inst. Code, § 15657, subd. (a).) On the same proof, a

12

plaintiff who sues as the personal representative or successor in interest of a deceased elder is partially relieved of the limitation on damages imposed by Code of Civil Procedure section 377.34 and may recover damages for the decedent's predeath pain and suffering.  (Welf. & Inst. Code, § 15657, subd. (b).)

"The Elder Abuse Act defines abuse as '[p]hysical abuse, *neglect*, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering' (Welf. & Inst. Code, § 15610.07, subd. (a)(1), italics added); or '[t]he deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering' (*id.*, § 15610.07, subd. (b)(2)).  The Act defines neglect as '[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise.'  (Welf. & Inst. Code, § 15610.57, subd. (a)(1).)  'Neglect includes, but is not limited to, all of the following: [¶] (1) Failure to assist in personal hygiene, or in the provision of food, clothing, or shelter. [¶] (2) Failure to provide medical care for physical and mental health needs. … [¶] (3) Failure to protect from health and safety hazards. [¶] (4) Failure to prevent malnutrition or dehydration.'  (*Id.*, § 15610.57, subd. (b).)  In short, neglect as a form of abuse under the Elder Abuse Act refers 'to the failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations.'  (*Delaney v. Baker* (1999) 20 Cal.4th 23, 34 [82 Cal. Rptr. 2d 610, 971 P.2d 986] (*Delaney*).)  Thus, when the medical care of an elder is at issue, 'the statutory definition of "neglect" speaks not of the undertaking of medical services, but of the failure to provide medical care.'  (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 783 [11 Cal. Rptr. 3d 222, 86 P.3d 290] (*Covenant Care*); see also *id.* at p. 786 ["statutory elder abuse may include the egregious withholding of medical care for physical and mental health needs . . . "].)

"To recover the enhanced remedies available under the Elder Abuse Act from a health care provider, a plaintiff must prove more than simple or even gross negligence in

13

the provider's care or custody of the elder. (Welf. & Inst. Code, § 15657.2; *Delaney*, *supra*, 20 Cal.4th at p. 32; *Sababin v. Superior Court* (2006) 144 Cal.App.4th 81, 88 [50 Cal. Rptr. 3d 266] (*Sababin*).) The plaintiff must prove 'by clear and convincing evidence' that 'the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of' the neglect. (Welf. & Inst. Code, § 15657.) Oppression, fraud and malice 'involve "intentional," "willful," or "conscious" wrongdoing of a "despicable" or "injurious" nature.' (*Delaney*, at p. 31.) Recklessness involves '"deliberate disregard" of the "high degree of probability" that an injury will occur' and 'rises to the level of a "conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it."' (*Id.* at pp. 31–32.) Thus, the enhanced remedies are available only for '"acts of egregious abuse" against elder and dependent adults.' (*Id.* at p. 35; see also *Covenant Care*, *supra*, 32 Cal.4th at p. 786 ['statutory elder abuse may include the egregious withholding of medical care for physical and mental health needs . . .'].) In short, '[i]n order to obtain the Act's heightened remedies, a plaintiff must allege conduct essentially equivalent to conduct that would support recovery of punitive damages.' (*Covenant Care*, at p. 789.) [¶] . . . [¶]

"From the statutes and cases discussed above, we distill several factors that must be present for conduct to constitute neglect within the meaning of the Elder Abuse Act and thereby trigger the enhanced remedies available under the Act. The plaintiff must allege (and ultimately prove by clear and convincing evidence) facts establishing that the defendant (1) had responsibility for meeting the basic needs of the elder or dependent adult, such as nutrition, hydration, hygiene or medical care (Welf. & Inst. Code, §§ 15610.07, subd. (b), 15610.57, subd. (b); *Delaney*, *supra*, 20 Cal.4th at p. 34); (2) knew of conditions that made the elder or dependent adult unable to provide for his or her own basic needs (*Sababin*, *supra*, 144 Cal.App.4th at pp. 85, 90; [Citations]); and (3) denied or withheld goods or services necessary to meet the elder or dependent adult's basic needs, either with knowledge that injury was substantially certain to befall the elder or dependent adult (if the plaintiff alleges oppression, fraud or malice) or with conscious

14

disregard of the high probability of such injury (if the plaintiff alleges recklessness) (Welf. & Inst. Code, §§ 15610.07, subd. (b), 15610.57, subd. (b), 15657; *Covenant Care*, *supra*, 32 Cal.4th at pp. 783, 786; *Delaney*, at pp. 31-32). The plaintiff must also allege (and ultimately prove by clear and convincing evidence) that the neglect caused the elder or dependent adult to suffer physical harm, pain or mental suffering. (Welf. & Inst. Code, §§ 15610.07, subds. (a), (b), 15657; [Citations].) Finally, the facts constituting the neglect and establishing the causal link between the neglect and the injury 'must be pleaded with particularity,' in accordance with the pleading rules governing statutory claims. (*Covenant Care*, at p. 790.)" (*Carter*, *supra*, 198 Cal.App.4th at pp. 404-407; accord, *Fenimore v. Regents of the University of California* (2016) 245 Cal.App.4th 1339, 1346-1347 (*Fenimore*); *Worsham v. O'Connor Hospital* (2014) 226 Cal.App.4th 331, 336-338 ["Absent specific facts indicating at least recklessness, any failure to provide adequate supervision would constitute professional negligence but not elder abuse"].)

While sufficient to state a claim for negligence, the facts as stated in paragraph 12 of the operative complaint here do not rise to the level of misconduct or elder abuse. The allegations, taken as true, do not particularly demonstrate CV Corporation denied care to Thomas knowing injury was substantially certain to befall him or that it consciously failed to act to avoid the probable danger of such an injury.

The facts pled do not demonstrate, for instance, CV Corporation consciously disregarded a probable risk of injury in connection with Thomas's pressure sores and catheter. As to the pressure sores, the operative complaint acknowledges they were recognized, albeit much later, and reported to a physician whose treatment orders "were not always followed." Without greater specificity, the allegation that care was not "always" provided to Thomas does not state facts that if true would show a conscious or intentional failure to avert likely harm to Thomas. As to the allegations regarding monitoring Thomas's catheter, the operative complaint alleged it was not monitored "on a regular basis." That may well reflect incompetent or inconsistent care, but the

15

allegation again falls short of the specificity required to make out the elements of a willful misconduct or elder abuse claim. Similarly, Thomas alleged he suffered from contractures which rendered the use of his hands for feeding "quite difficult," but he did not state specific facts that would indicate he was unable to feed himself or that Facility employees knew or recklessly failed to discover the extent of his difficulties.[6]

Thomas, however, responds as he did in the trial court: pointing to the allegations in paragraphs 22 and 23 (and similar paragraphs found elsewhere in the complaint) and contending the assertions that "Defendants and each of them, knowingly and consciously breached their duties to Thomas, as set forth above" and "intentionally breached the aforesaid duty of care" in those paragraphs are alone sufficient to allege the requisite culpability. We reject this view, which is inconsistent with prior cases that hold willful misconduct and elder abuse claims, including the elements that require a defendant to have acted or failed to act with a mental state of at least recklessness, must be pleaded by specific *factual* allegations. (See, e.g., *Worsham v. O'Connor Hospital*, *supra*, 226 Cal.App.4th at pp. 336-338 ["Absent specific facts indicating at least recklessness, any failure to provide adequate supervision would constitute professional negligence but not elder abuse"]; *Carter*, *supra*, 198 Cal.App.4th at pp. 407, 412-413 [*the facts* constituting Elder Abuse Act neglect must be pleaded with particularity; willful misconduct allegations deficient because plaintiffs did not "allege[] facts, as opposed to conclusions or contentions," indicating hospital acted with deliberate indifference], italics added; *Simmons v. Southern Pac. Transportation Co.*, *supra*, 62 Cal.App.3d at p. 361 [plaintiff asserting a cause of action for willful misconduct must plead specific facts upon which the charge is based].) Thomas's view is inconsistent with the well-established rationale for requiring specific pleading of certain causes of action, namely, to enable a court to

---

[6]     Notably, the facts stated in paragraph 12 of the operative complaint make no reference to specific Facility employees at all, instead framing its allegations in terms of what the Facility (operating under the name Country Villa Belmont Heights) did or did not do.

16

determine whether, on the facts pled, there is at least a prima facie foundation for the claim (and to furnish a defendant with definite charges that can be met intelligently). (See, e.g., *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216-217 [discussing the purposes of the specificity requirement in connection with fraud claims] (*Children's Television*).)

The case authority upon which Thomas relies to argue the contrary, *Perkins v. Superior Court* (1981) 117 Cal.App.3d 1, actually undercuts his position. The *Perkins* court held that allegations a defendant acted "wrongfully and intentionally" should not be read in isolation, but in the context of the acts alleged in the rest of the complaint. (*Id.* at p. 6.) The court went on to explain that "[p]leading in the language of the statute is not objectionable when sufficient facts are alleged to support the allegation." (*Id.* at pp. 6-7.) We agree with these observations, and they only serve to illuminate the problem here: the assertions in the operative complaint that tracked the mental state elements of willful misconduct and elder abuse were not backed by sufficient, specific facts. To be sure, the specificity required should not be terribly demanding, particularly where a defendant is likely to have greater knowledge of the facts than the plaintiff. (See *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157 (*Tarmann*).) But more than the effectively boilerplate allegations of reckless, willful, or malicious conduct that were made here is necessary. (*Johns-Manville Sales Corp. v. Workers' Comp. Appeals Bd.*, *supra*, 96 Cal.App.3d at p. 931 ["No amount of descriptive adjectives or epithets may turn a negligence action into an action for intentional or [willful] misconduct"].)

Moreover, undertaking just a basic comparison of the facts at issue here with those in cases *Carter* cites as examples of egregious conduct rising above mere negligence further reinforces our conclusion that the demurrer to the second and seventh causes of action was correctly sustained.[7] (*Carter*, *supra*, 198 Cal.App.4th at pp. 405-406

---

[7] Because we conclude the Elder Abuse Act cause of action fails, we would also conclude the allegations in each of the remaining causes of action before us that were

17

[highlighting cases in which nursing facilities, among other things, left a patient "in his own excrement so that ulcers exposing muscle and bone became infected"; frequently left a patient "lying in her own feces and urine for extended periods" despite plaintiff's persistent complaints; dropped a patient and left her in "'filthy and unsanitary conditions'"; and "used physical and chemical restrains to punish an elder and prevent her from obtaining help"].  The facts alleged here are substantially less egregious.  Indeed, even another case on which Thomas relies, *Sababin*, *supra*, 144 Cal.App.4th 81, presents different facts than those alleged here, and different in a way that explains why the court in that case concluded there were adequate allegations and evidence of reckless conduct to warrant a trial.  As a more recent decision explains, *Sababin* held a reckless failure to provide medical care could be inferred from a care facility's "significant pattern" of ignoring a patient care plan it knew required a certain type of skin care on a daily basis.  (*Fenimore*, *supra*, 245 Cal.App.4th at pp. 1349-1350; see also *Sababin*, *supra*, 144 Cal.App.4th at p. 90 ["A significant pattern [of withholding care] is one that involves repeated withholding of care and leads to the conclusion that the pattern was the result of choice or deliberate indifference"].)  Here, there is no analogous "significant pattern" that is sufficiently alleged by the facts in the operative complaint.

### C.     Fraud Claims

Generally, "'"[t]he elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" (*Lazar v. Superior Court* (1996) 12

---

intended to trigger the heightened remedies available under that Act would also be subject to a motion to strike.

Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981.).”[8] (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173.)  Thomas alleges three species of fraud in the operative complaint: fraudulent concealment, constructive fraud, and fraudulent misrepresentation. Each of these, including constructive fraud, must be pled with specificity.  (*Knox v. Dean* (2012) 205 Cal.App.4th 417, 434 [“Constructive fraud, like actual fraud, must be pleaded with specificity”]; *Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949, 961 [same]; *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1472 [complaint’s allegations fail to state a claim for fraudulent concealment because “the requirement that ‘[f]raud must be pleaded with specificity’ applies equally to a cause of action for fraud and deceit based on concealment”]; *Tarmann*, *supra*, 2 Cal.App.4th at p. 157.)

### 1.      *Constructive fraud and fraudulent concealment*

Constructive fraud requires that the defendant have a fiduciary duty to disclose information to the plaintiff.  (*Younan v. Equifax Inc.* (1980) 111 Cal.App.3d 498, 516-517; see also *Prakashpalan v. Engstrom, Lipscomb and Lack* (2014) 223 Cal.App.4th 1105, 1131 [constructive fraud arises from a breach of duty between entities in a confidential relationship, when one induces reliance on the other to the latter’s detriment; actual reliance and causation must be shown].)  As pled by Thomas, his cause of action for fraudulent concealment likewise depends on the existence of a fiduciary duty. (*Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 164 [fraudulent concealment requires concealment or suppression of a material fact by a defendant with a duty to disclose the fact to the plaintiff].)

A fiduciary duty may arise by law or by agreement.  (*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.* (2000) 83 Cal.App.4th 409, 416, disapproved

---

[8]      Thomas cites *Byrum v. Brand* (1990) 219 Cal.App.3d 926 for the proposition that constructive fraud does not require proof of an intent to defraud.  While that is a matter of some debate, we accept the proposition for purposes of our discussion.

on other grounds by *Reeves v. Hanlon* (2004) 33 Cal.4th 1140; *Children's Television*, *supra,* 35 Cal.3d at p. 221 ["[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law"].) Here, Thomas appears to rely primarily on the first such avenue, a fiduciary duty arising by law. He points to the following language in *McCall v. PacifiCare of California, Inc.*, *supra*, 25 Cal.4th 412 (*McCall*) to argue CV Corporation had a fiduciary duty to Thomas: "A provider may breach the fiduciary duty it owes the enrollee (see *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 129), inter alia, by permitting its financial interest detrimentally to affect treatment decisionmaking or failing to disclose such interest." (*McCall*, *supra*, 25 Cal.4th at p. 426.)

After parsing *McCall*, we are convinced it does not bear the weight Thomas places upon it. The actual issue presented in the case had little if anything to do with the existence or contours of a fiduciary duty. As framed by the Court itself, the only issue on appeal was "whether state law claims against a health maintenance organization (HMO), arising out of its refusal to provide services under a Medicare-subsidized health plan, fall within the exclusive review provisions of the Medicare Act requiring exhaustion of administrative remedies." (*Id.* at p. 414.) We are not persuaded the single sentence Thomas highlights in *McCall* established the existence of a fiduciary duty between a patient and a nursing facility as a matter of law. (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680 [language in a judicial opinion is to be understood in accordance with facts and issues before the court and an opinion is not authority for propositions not considered]; *McCall*, *supra*, 25 Cal.4th at p. 426, fn. 10 ["This case does not call upon us to determine the sufficiency of any of the McCalls' allegations to state a cause of action under California law, and we express no opinion on whether the claims ultimately will be proven"].)

In fact, the case *McCall* cites in the sentence in question, *Moore v. Regents of University of California*, *supra*, 51 Cal.3d 120 (*Moore*), is far more apt—and compels

rejection of Thomas's argument because it *holds* a hospital does not have a fiduciary duty to a patient even though a physician ordinarily does. The plaintiff in *Moore*, who suffered from leukemia, underwent treatment at UCLA Medical Center and the plaintiff's doctor removed his spleen and took samples of his blood and other bodily fluids. (*Id.* at pp. 125-126.) The plaintiff subsequently sued the doctor and the medical center, among others, claiming they had breached a fiduciary duty owed to him by using his cells in potentially lucrative medical research without his permission. (*Id.* at pp. 124-125.) Our Supreme Court held a physician has a fiduciary duty to disclose all information material to a patient's decision on whether to submit to lawful medical treatment. (*Id.* at p. 129.) The plaintiff therefore could pursue a breach of fiduciary duty claim as to his doctor. But as to the other defendants, the court held to the contrary: "In contrast to [the doctor], none of these defendants stood in a fiduciary relationship with Moore or had the duty to obtain Moore's informed consent to medical procedures. If any of these defendants is to be liable for breach of fiduciary duty or performing medical procedures without informed consent, it can only be on account of [the doctor's] acts and on the basis of a recognized theory of secondary liability, such as respondeat superior." (*Id.* at p. 133.)

We follow *Moore* and hold CV Corporation, as the alleged operator of a facility materially akin to the hospital in that case, had no fiduciary duty to Thomas. Indeed, Thomas cites no other case holding a nursing facility operator owes a fiduciary duty to its residents as a matter of law, and this casts even greater doubt on his reading of *McCall*; if Thomas were right that *McCall* is correctly read to have held nursing facilities or hospitals (as opposed to doctors) have fiduciary relationships with their residents and patients, cases affirming the existence of such a duty should be legion. Furthermore, even if the relevant language in *McCall* should be regarded as a holding on an issue squarely presented, we would still conclude *Moore* is the apposite case here—a nursing facility is more akin to a hospital than an HMO.

Focusing specifically on the fraudulent concealment cause of action, it (unlike the constructive fraud claim) does state: "Thomas trusted and confided in Defendants . . . to

21

provide him with such custodial and related medical care and treatment as he needed to meet his individualized needs. Said defendants accepted such trust and confidence. By virtue of acceptance of his trust and confidence, said defendants owed Thomas a fiduciary duty . . . ." Insofar as this is an attempt to plead the existence of a fiduciary duty by the second accepted manner in which such a duty may arise (by agreement), it fails for lack of specific pleading. Thomas has alleged no facts describing a contract or written agreement between Thomas and CV Corporation (or the Facility), and the boilerplate assertions concerning trust and confidence do not otherwise suffice to show CV Corporation undertook to act on behalf and for the benefit of Thomas. (*Cansino v. Bank of America*, *supra*, 224 Cal.App.4th at p. 1472; see also *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 [specific pleading requirement for fraud necessitates pleading facts that show the how, where, when, and who of the fraudulent conduct].) Because the operative complaint does not adequately plead the existence of a fiduciary relationship, the fourth and fifth causes of action that depend on such a relationship necessarily fail.

### 2. *Fraudulent misrepresentation to a third party*

Thomas's fraudulent misrepresentation claim is predicated on a theory that Thomas may obtain relief for representations CV South Bay, allegedly at CV Corporation's direction, made to DPH in seeking to obtain and renew the Facility's license to operate. Both in the operative complaint and in his briefing on appeal, Thomas relies on *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066 (*Randi W.*), to contend such a theory of liability is legally viable.

In *Randi W.*, our Supreme Court considered the circumstances under which an employer could be liable in tort for failing to use reasonable care in recommending a former employee for employment without disclosing derogatory material information about the employee. (*Randi W.*, *supra*, 14 Cal.4th at p. 1070.) Specifically, a student claimed her school's vice principal sexually assaulted her and sued other school districts where the vice principal formerly worked, asserting claims for fraud and negligent

22

misrepresentation because the vice principal's former employers wrote letters of recommendation for him that failed to disclose earlier sexual misconduct allegations that had been made against him. (*Id.* at pp. 1072-1073.) As to the fraud claim in particular, the student alleged "defendants intentionally made those knowingly false representations about [the vice principal] with knowledge that they were 'likely to injure plaintiff,' and with the intent that they would be relied upon 'by all other defendants and others, and in fact were relied upon by each other defendant and plaintiff.'" (*Id.* at p 1073.)

The Court held the recommendation letters that contained "unreserved and unconditional praise for [the vice principal] despite defendants' alleged knowledge of complaints or charges of his sexual misconduct with students" could form the basis for tort liability for fraud (and negligent misrepresentation). (*Randi W.*, *supra*, 14 Cal.4th at p. 1070.) The court recognized "no California case has yet held that one who intentionally or negligently provides false information to another owes a duty of care *to a third person* who did not receive the information and who has no special relationship with the provider." (*Id.* at p. 1077, italics in original.) But the court held those who wrote the recommendation letters did owe third persons a duty not to misrepresent the facts in describing the qualifications of a former employee, "if making these misrepresentations would present a substantial, foreseeable risk of physical injury to . . . third persons." (*Id.* at p. 1081.) The court explained the plaintiff did not need to show *she* actually relied on the letters so long as she alleged "her injury resulted from action that *the recipient* of defendants' misrepresentations took in reliance on them." (*Id.* at p. 1085, italics in original.)

The facts pled by Thomas in his fraudulent misrepresentation claim based on *Randi W.* fall short of what that the principles espoused in that case require. Thomas alleged that CV South Bay (at CV Corporation's direction) made representations the deficiencies uncovered during DPH investigations would be corrected to "trick and deceive" DPH into licensing the Facility and that Thomas was "in a class of persons that was foreseeably to be injured by . . . [the] misrepresentations." These alleged

23

misrepresentations concerning whether the Facility intended to remedy the alleged defects are too dissimilar from the circumstances in *Randi W.* for us to conclude Thomas was likely to suffer the alleged harm he experienced. Put differently, the connection between the alleged representations to DPH (by whom, how, and precisely when we are not told) and the injuries Thomas allegedly suffered is significantly more attenuated than was the case in *Randi W.* And permitting liability to attach based on third-party reliance is problematic here for essentially the same reason: allegations that DPH's decision to license the Facility in reliance on CV South Bay's representations is too attenuated to justify abandoning the customary reliance requirement for fraud causes of action; there is no equivalent substantial and foreseeable risk of physical injury here. (Compare *id.* at p. 1084 [explaining the officials that wrote the letters of recommendation "intended or should have realized that their misrepresentations were likely to induce action . . . that involved an unreasonable risk of physical harm to plaintiff"].)

Moreover, even apart from the attenuation problems we have identified, Thomas's allegations lack the specificity required to properly allege fraud and demonstrate only a non-actionable future promise to perform. In paragraph 67 of the operative complaint, Thomas alleges "said defendants" promised to correct the deficiencies identified by DPH but "such corrections were not made or were not effective." The apparent concession that actions were taken but not effective is inconsistent with the allegation that CV South Bay made misrepresentations of, as the trial court put it, "present material fact." True, the operative complaint does include general, conclusory statements that are to the contrary; for example, that the representations "were false when made and intended to trick and deceive" DPH. But for a fraud claim that must be pled by specific facts, these allegations do not suffice, especially in light of the seemingly contradictory allegations in paragraph 67. (*Stockton Mortgage, Inc. v. Tope* (2014) 233 Cal.App.4th 437, 458 [representation generally not actionable unless about past or existing facts]; *Tarmann*, *supra*, 2 Cal.App.4th at p. 159 [misrepresentation requires specific pleading of an intent to deceive, not an honest but unreasonable intent to perform].)

24

*D.* *Thomas Has Not Shown He Could Amend to State a Proper Cause of*
*Action*

Where, as here, a trial court sustains a demurrer without leave to amend, we review the decision not to allow further amendment for an abuse of discretion. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 889-890.) "The burden of proving [a] reasonable possibility [of a curative amendment] falls squarely on the plaintiff." (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) "To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action. [Citations.] Absent such a showing, the appellate court cannot assess whether or not the trial court abused its discretion by denying leave to amend." (*Cantu v. Resolution Trust Corp.*, *supra*, at p. 890; accord, *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of the pleading].)

Thomas expressly disclaimed any desire to further amend the operative complaint in the trial court. He likewise has made no showing on appeal of how he might amend the operative complaint to state a valid cause of action. We therefore conclude the trial court did not abuse its discretion in denying further leave to amend.

DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:



KRIEGLER, Acting P.J.



RAPHAEL, J.*

---

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.